IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>CHRISTOPHER S. HANDLEY,<br><br>  Defendant. | No. 1:07-cr-00030-JEG<br><br>**O R D E R** |

  This matter is before the Court on Defendant's Motion to Dismiss, which the Government resists. Hearing was held on the motion on June 24, 2008. Attorneys Eric Chase and Paul Scott were present for the Defendant. Assistant United States Attorney Craig Gaumer and Department of Justice Trial Attorney Elizabeth Yusi represented the Government. The matter is now fully submitted for review.

**SUMMARY OF MATERIAL FACTS**

  On May 8, 2007, Defendant Christopher Handley (Defendant) was charged in a three-count indictment with receipt of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(a) (count one) and possession of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(b) (count two). Count three was a notice of forfeiture. On October 17, 2007, the Grand Jury returned a superseding indictment, charging Defendant with receipt of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(a) (count one), possession of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(b) (counts two through four), and mailing obscene matter in violation of 18 U.S.C. §§ 1461, 2 (count five). Count six was a notice of forfeiture.

  The superseding indictment describes the images at issue in counts one through four as follows:

> one or more drawings or cartoons, that depict a minor engaging in
> sexually explicit conduct, and is obscene, and depicts an image that is, or

> appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between person of the same or opposite sex, which lacks serious literary, artistic, political, or scientific value.

The superseding indictment describes the images at issue in count five as "a copy of a book containing visual depictions, namely drawings and cartoons, that depicted graphic bestiality, including sexual intercourse, between human beings and animals such as pigs, monkeys, and others." Defendant states all of the images at issue in counts one through five are drawings from Japanese anime comic books that were produced either by hand or by computer, and the drawings depict fictional characters. Defendant states there is no indication the drawings represent or refer to any actual persons, either minor or adult, and the drawings are purely a product of the artist's imagination.

On May 5, 2008, Defendant filed this motion to dismiss, arguing the statute upon which the indictment is based violates the First and Fifth Amendments of the United States Constitution and that the facts alleged do not support an indictment for violations of 18 U.S.C. §§ 1466A, 1461, and § 2.

The Government resists, asserting the materials at issue in this case are subject to and properly charged under statutes that constitutionally criminalize obscene materials. The Government argues Defendant's motion to dismiss should be denied.

## APPLICABLE LAW AND DISCUSSION

**I.     First Amendment Challenge to 18 U.S.C. § 1466A(a) & (b).**

   **A.  Limited Right to Possess Obscene Materials.**

Count one charges a violation of 18 U.S.C. § 1466A(a), which states,

> Any person who, in a circumstance described in subsection (d), knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that – (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is

> obscene; or (2)(A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and (B) lacks serious literary, artistic, political, or scientific value; or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(1), including the penalties provided for cases involving a prior conviction.

Counts two through four charge a violation of 18 U.S.C. § 1466A(b), which states,

> Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that – (1)(A) depicts a minor engaging in sexually explicit conduct; and (B) is obscene; or (2)(A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and (B) lacks serious literary, artistic, political, or scientific value; or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(2), including the penalties provided for cases involving a prior conviction.

Section 1466A(a) criminalizes production, distribution, receipt, or possession with intent to distribute, whereas section 1466A(b) criminalizes simple possession.[1] "The term 'sexually explicit conduct' has the meaning given the term in section 2256(2)(A) or 2256(2)(B)." Id. § 1466A(f)(2). "'[S]exually explicit conduct' means actual or simulated – (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between person of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." Id. § 2256(2)(A).

> "[S]exually explicit conduct" means – (i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse whether the genitals, breast, or pubic area of any person is exhibited; (ii) graphic or lascivious simulated; (I) bestiality;
> (II) masturbation; or (III) sadistic or masochistic abuse; or (iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

---

[1] Both sections require a nexus to interstate commerce.

18 U.S.C. § 2256(2)(B).

Defendant argues counts one through four of the superseding indictment, which each charge a violation of 18 U.S.C. § 1466A, should be dismissed because private possession of obscene materials is a right protected by the First Amendment. The Constitution prohibits "making mere private possession of obscene material a crime." Stanley v. Georgia, 394 U.S. 557, 568 (1969). The limited right to possess obscene materials in the privacy of one's own home recognized in Stanley depended not on First Amendment grounds, but on the right to privacy in the home found in the Fourth Amendment. United States v. 12 200-Foot Reels of Super 8mm. Film, 413 U.S. 123, 126 (1973).

Obscene materials are afforded no protection under the First Amendment. Id.; see also United States v. Williams, — U.S. —, 128 S. Ct. 1830, 1835-36 (2008) ("We have long held that obscene speech – sexually explicit material that violates fundamental notions of decency – is not protected by the First Amendment."); Flynt v. Ohio, 451 U.S. 619, 622 (1981) ("Obscene material, properly defined, is beyond the protection of the First Amendment."); Miller v. California, 413 U.S. 15, 23 (1973) ("This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment."); Roth v. United States, 354 U.S. 476, 492-93 (1957) (holding obscenity is not expression protected by the First Amendment.").

Defendant is not charged in counts one through four with mere private possession of obscene materials. Defendant is charged in count one with receipt of obscene materials that were transported in interstate commerce and in counts two through four with possession of obscene materials that had been transported in interstate commerce.[2] While mere possession of obscene

---

[2] Count five charges a violation of 18 U.S.C. § 1461, mailing obscene matter through the United States mail. Defendant's arguments are directed at 18 U.S.C. § 1466A, and the Supreme Court has previously concluded constitutional attacks on 18 U.S.C. § 1461 cannot be sustained. See Hamling v. United States, 418 U.S. 87, 114 (1974).

4

materials within the privacy of an individual's own home is a right protected by the Fourth Amendment, the zone of privacy recognized in Stanley is not unlimited.

> We are not disposed to extend the precise, carefully limited holding of Stanley to permit importation of admittedly obscene materials simply because it is imported for private use only. To allow such a claim would be not unlike compelling the Government to permit importation of prohibited or controlled drugs for private consumption as long as such drugs are not for public distribution or sale. We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others. Nor is there any correlative right to transport obscene material in interstate commerce.

12 200-Foot Reels of Super 8mm. Film, 413 U.S. at 128 (citations omitted); see also United States v. Orito, 413 U.S. 139, 141 (1973) (recognizing Stanley has firmly established the right to possess obscene material in the privacy of the home but rejecting the argument that Stanley creates a correlative right to receive, transport, or distribute obscene materials in interstate commerce); United States v. Whorley, 386 F. Supp. 2d 693, 695 (E.D. Va. 2005) (recognizing the zone of privacy created in Stanley was limited and did not extend to the receipt of legally offensive materials from the internet in violation of section 1466A(a)(1)). Thus, while an individual has a limited right to possess obscene materials in the privacy of his own home, there exists no right to receive or possess obscene materials that have been moved in interstate commerce, and that is the illegal conduct with which Defendant is charged.

Defendant argues the First Amendment affords protection to the possession and receipt of sexual images not involving actual children. As Defendant acknowledges, child pornography involving real children can be banned irregardless of whether the images are obscene. New York v. Ferber, 458 U.S. 747, 761 (1982); Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240 (2002). There is no dispute that the images at issue in this case do not involve real children but instead depict cartoons of children. Because the images at issue do not depict real children but instead merely cartoon depictions of children, the images are to be measured by the standard of

5

obscenity enunciated in Miller v. California, 413 U.S. at 15. Obscene materials are not limited to those involving real persons and can include materials such as cartoons.

> When the Court declared that obscenity is not a form of expression protected by the First Amendment, no distinction was made as to the medium of the expression. Obscenity can, of course, manifest itself in conduct, in the pictoral representation of conduct, or in the written and oral description of conduct. The Court has applied similarly conceived First Amendment standards to moving pictures, to photographs, and to words in books.

Kaplan v. California, 413 U.S. 115, 118-19 (1973) (citation omitted) (recognizing pictures, films, paintings, drawings, engravings, oral utterances, and the printed word have First Amendment protection "until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution").

Defendant argues Free Speech Coalition gave constitutional legitimacy to pornography in which no real children are used. The Court disagrees. Free Speech Coalition dealt with whether the Child Pornography Prevention Act of 1996 (CPPA), specifically 18 U.S.C. §§ 2256(8)(B) and (D), abridged the freedom of speech. Free Speech Coalition, 535 U.S. at 241. Section 2256(8)(B) banned child pornography that appeared to depict minors but was produced without using any actual children. Id. at 239. Because the statute criminalized material that was neither child pornography involving actual children under Ferber nor obscenity under Miller, the Supreme Court concluded the CPPA sought to reach beyond obscene material, and the statute was struck down as overbroad and unconstitutional. Id. at 256.

Section 1466A (a)(1) and (b)(1) do not suffer from the same defect as those found in the CPPA in Free Speech Coalition. Sections 1466A(a)(1) and (b)(1) specifically include as an element of each offense that the material must be obscene. Free Speech Coalition required that the prohibited material fall into one of the categories recognized by Ferber or Miller, and sections 1466A(a)(1) and (b)(1) meet this requirement.

6

Defendant argues even if the materials are deemed obscene, he has a constitutional right to possess them. Again, Defendant has not been charged with mere possession of obscenity in the privacy of his own home. Counts one through four charge Defendant with conduct that extends beyond the limited right recognized by Stanley, receipt of obscene visual depictions that were transported in interstate commerce and possession of obscene images that were transported in interstate commerce.

Counts one through four charge violations of 18 U.S.C. § 1466A(a) and (b), of which subsections 1466A(a)(1) and (b)(1) prohibit obscene visual representations of the sexual abuse of children. The Court concludes subsections 1466A(a)(1) and (b)(1) do not violate the First Amendment and therefore are not unconstitutional.

    **B.  Constitutional Challenge Based on Vagueness and Overbreadth.**

    **1.  Vagueness.**

Defendant next argues that section 1466A is vague, asserting it does not clearly define the conduct it purports to prohibit, limiting the lawyer's ability to advise a client and a non-lawyer's ability to grasp what is unlawful. "A criminal statute is vague if persons of a 'common intelligence must necessarily guess at its meaning and differ as to its application.'" United States v. Carpenter, 422 F.3d 738, 746 (8th Cir. 2005) (quoting United States v. Smith, 171 F.3d 617, 622-23 (8th Cir. 1999)) (internal quotation marks omitted).

Defendant argues the terms "appears to be" and "a minor" in section 1466A are inherently vague, particularly as to visual depictions of fictional characters. Defendant contends that because cartoons are a product of one's imagination, the characters portrayed have no age, and any indicators of age may be perceived very differently by different observers and could result in vastly different estimates by different individuals.

The Government maintains that because the term "appears to be" only arises under the *per se* obscenity provisions of subsections 1466A(a)(2) and (b)(2), the constitutionality of sections 1466A(a)(1) and (b)(1) are not at issue on this particular ground. The Government also

7

points out that Defendant does not challenge count five on this ground, which charges Defendant with a violation of section 1461.

"There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." United States v. Bamberg, 478 F.3d 934, 937 (8th Cir. 2007). "[T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Hamling, 418 U.S. at 111 (quoting Roth, 354 U.S. at 491) (quotation omitted). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Williams, — U.S. — 128 S. Ct. at 1845 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).

Defendant argues that in drawings, sculptures, and cartoons, there is likely to be no discernable difference between a depiction of a sixteen-year-old child and a nineteen-year-old adult. "Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." Williams, 128 S. Ct. at 1846; see also United States v. Petrillo, 332 U.S. 1, 7 (1947) ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense.").

In attacking the terms "appears to be" and "a minor," Defendant imprecisely blends the law of child pornography with the law of obscenity. The signal distinction, most pertinent here, is that child pornography offenses require the depiction of an actual minor while obscenity offenses do not. Obscenity within the structure of the criminal law, as previously noted, can come in many different forms of expression, including those that contain pictures not involving actual children.

The PROTECT[3] Act in which 18 U.S.C. § 1466A was enacted defines "minor" as "a person who has not reached 18 years of age." 18 U.S.C. § 25(a)(2). Thus, while the term is not explicitly defined in 18 U.S.C. § 1466A, the intent of Congress was clear. Even if the legislative intent was unclear, the term "minor" would be given its plain, ordinary meaning. Schumacher v. Cargill Meat Solutions Corp., 515 F.3d 867, 871 (8th Cir. 2008) ("In the absence of a statutory definition or clear contrary legislative intent, statutory terms are given their plain, ordinary, and commonly understood meaning."); Cudworth v. Midcontinent Commc'n., 380 F.3d 375, 381 (8th Cir. 2004) (same). Black's Law Dictionary defines the term "minor" as "[a]n infant or person who is under the age of legal competence. A term derived from the civil law, which described a person under a certain age as *less than* so many years. In most states, a person is no longer a minor after reaching the age of 18." Black's Law Dictionary 997 (6th ed. 1990). The term "minor" as used in 18 U.S.C. § 1466A provides adequate notice of the proscribed conduct, and the term does not lend itself to arbitrary enforcement. The phrase "appears to be" is straight forward and not subject to differing meanings. The Court concludes the phrase "appears to be" and the term "minor" as used in the statute are not unconstitutionally vague.

In his Reply, Defendant argues the vagueness he complains of in the statute arises not from the term "minor" but from the language in subsection (c) of the statute, which states that "[i]t is not a required element . . . that the minor depicted actually exist." 18 U.S.C. § 1466A(c). Defendant argues that fictional characters depicted in drawings have no age, and it would be difficult, if not impossible, for a defendant, let alone a jury, to discern the intended age of persons who do not exist.

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent" – wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

---

[3] Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today.

9

Williams, 128 S. Ct. at 1846. The determination of what is, or appears to be, a minor does not require a wholly subjective judgment. The term "minor" has a statutory definition contained within the PROTECT Act and has a commonly understood meaning of being an individual under the age of eighteen. The phrase "appears to be" is not subject to differing interpretations, and the plain meaning of the phrase is clear. The Court concludes the text of 18 U.S.C. § 1466A is not unconstitutionally vague in violation of the Due Process Clause, and the language of the statute provides adequate notice about that which it criminalizes.

### 2. Overbreadth.

Defendant asserts that in addition to banning obscene materials, subsections 1466A(a)(2) and (b)(2) proscribe sexually-oriented speech that is not obscene, without a compelling Government reason for doing so. Defendant contends subsections 1466A(a)(2) and (b)(2) ban virtual child pornography that is not obscene, prohibiting sexually-oriented speech without considering whether it appeals to the prurient interest or is patently offensive. Defendant notes the only element from the three-prong Miller test incorporated into these subsections of § 1466A is that the depiction must lack serious literary, artistic, political, or scientific value.

"According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." Williams, — U.S. —, 128 S. Ct. at 1838. "The overbreadth doctrine is 'strong medicine' to be used 'sparingly' and only when the overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" Ways v. City of Lincoln, Neb., 274 F.3d 514, 518 (8th Cir. 2001) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613, 615 (1973)).

The language of subsections 1466A(a)(1) and (b)(1) clearly require the material be obscene and the three-prong Miller test would necessarily be incorporated into the essential elements of a subsection 1466A(a)(1) or (b)(1) offense. These sections of the statute are not overbroad. Whorley, 386 F. Supp. 2d at 697 (finding violations of § 1466A(a)(1) are measured

10

by the obscenity standard in Miller, which serves as a firewall against the inclusion of constitutionally protected speech).

The language of subsections 1466A(a)(2) and (b)(2) does not require the material be deemed obscene. Instead, those sections merely require that the jury find the material depicts a minor, or what appears to be a minor, engaging in at least one of the acts enunciated in the list of various sexually-explicit conduct contained in subsections 1466A(a)(2)(A) or (b)(2)(A), and that the visual depiction lacks serious literary, artistic, political, or scientific value.

The Government defends subsections 1466A(a)(2) and (b)(2) by asserting they constitutionally prohibit per se obscenity.[4] The Government argues a per se obscenity standard is simply a conclusion made by Congress that narrow classes of materials are the sort of hard core items that would invariably satisfy the constitutional standards for obscenity set out in Miller, and as such, the materials may be fully proscribed. Claiming Congress has the power and latitude to legislate other standards such as the ones proscribed in subsections 1466A(a)(2) and (b)(2), the Government cites generally to Patterson v. New York, 432 U.S. 197 (1977). Patterson addressed the constitutionality of a New York law burdening a defendant with proving an affirmative defense to a charge of murder. Patterson, 432 U.S. at 198. Patterson provides little insight, if any, into the Government's per se obscenity argument.

The Government argues that because of the limitation on the age of the minors depicted, and the type of conduct that must be depicted in the images, "patently offensive" and "prurient interest" elements are not required under subsections 1466A(a)(2) and (b)(2). Subsections 1466A(a)(1) and (b)(1) both require the visual depiction at issue to depict "sexually explicit conduct" as defined by the statute. "Sexually explicit conduct," as defined in the statute, includes (but is not limited to) graphic beastiality, sadistic or masochistic abuse, sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between person

---

[4] The Government clarified at argument that "per se obscenity" as a legal principle has its genesis in Justice Department briefs and, as yet, awaits judicial support.

of the same or opposite sex.  This is the exact same sexual content banned by subsections 1466A(a)(2) and (b)(2).  The Government's argument that subsections 1466A(a)(2) and (b)(2) represent "narrow classes of materials" that are per se obscene simply does not account for the fact that subsections 1466A(a)(1) and (b)(1) prohibit the same "narrow classes of materials" yet also require a finding beyond a reasonable doubt that the material is obscene.

As part of its *per se* obscenity argument, the Government asserts that in Miller, 413 U.S. at 24-25, the Supreme Court recognized as obscene certain types of "hard core" pornography. The Court does not read the language in Miller to reach so far.

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . .
>
> It is possible, however, to give *a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra*: (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Miller, 413 U.S. at 24-25 (emphasis added) (citation omitted).  The Supreme Court was not recognizing certain types of "hard core" pornography as per se obscene, but instead, giving two examples of sexual conduct that could be specifically defined by state law under part (b) of the three-prong Miller test, as indicated by the language emphasized above.

The Government also argues that Smith v. United States, 431 U.S. 291, 304 n.11 (1977), left open the question of whether Congress could create a national standard regarding what is "patently offensive."

> It is to be noted that Miller held only that the States could not be compelled to adopt a national standard.  If a state legislature decided that it wanted a national community standard for purposes of instructing state juries, or if Congress amended the federal legislation in such a way as to require

> reference to a national standard, a different question would be presented. We express no view upon any such question.

Smith, 431 U.S. at 304, n.11 (citation omitted). The Supreme Court was not referring to Congress legislating a national standard defining "prurient interests" or "patently offensive," but instead the Supreme Court was referring to legislative amendments that could include a reference to a "national standard," as opposed to the "contemporary community standard" enunciated in Miller. The Supreme Court repeatedly iterated in Smith that "appeal to prurient interest" and "patent offensiveness" are standards that cannot be defined legislatively and are instead questions of fact for the jury to resolve.

> The phrasing of the Miller test makes clear that contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case. The test itself shows that appeal to the prurient interest is one such question of fact *for the jury to resolve. The Miller opinion indicates that patent offensiveness is to be treated in the same way.*

Id. at 300-01 (emphasis added). It would be inappropriate for a legislature "to try to define the contemporary community standard of appeal to prurient interest or patent offensiveness, if it were even possible for such a definition to be formulated." Id. at 302.

> Under a National Constitution, fundamental First Amendment limitations on the powers of the States do not vary from community to community, but this does not mean that there are, or should or can be, fixed, uniform national standards of precisely what appeals to the 'prurient interest' or is 'patently offensive.' These are essentially questions of fact, and our Nation is simply too big and too diverse for this Court to reasonably expect that such standards could be articulated for all 50 States in a single formulation, even assuming the prerequisite consensus exists.

Miller, 413 U.S. at 30; see also Ashcroft v. Am. Civil Liberties Union, 535 U.S. 564, 576 (2002) ("[T]his Court has indicated that the 'patently offensive' prong of the test is also a question of fact to be decided by a jury applying contemporary community standards."). The Government's argument that Congress can legislatively define what is "patently offensive" or "appeals to the prurient interest," and therefore these elements are not necessary as essential elements in

subsections 1466A(a)(2) or (b)(2), ignores the long-recognized role of the jury as fact-finder in obscenity cases.

The Supreme Court outlined in Miller a three-prong test for the trier of fact to use in determining what constitutes obscenity. The Government has failed to provide any authority that indicates Congress can usurp the function of the fact-finder by doing away with portions of the Miller obscenity test in regulating visual depictions not involving the use of actual minors. Pornography can only be banned if it is obscene or involves the use of actual minors. Free Speech Coalition, 535 U.S. at 240. Subsections 1466A(a)(2) and (b)(2) require neither and are therefore overbroad and unconstitutional.

This conclusion has minimal impact on this case given the almost complete redundancy of the conduct criminalized by subsections 1466A(a)(1) and (b)(1) with that of subsections 1466A(a)(2) and (b)(2). The observable differences between these subsections are (1) subsections 1466A(a)(1) and (b)(1) incorporate the Miller test as essential elements, whereas subsections 1466A(a)(2) and (b)(2) do not; (2) subsections 1466A(a)(2) and (b)(2) include the "appears to be" language in relation to "a minor;" and (3) subsections 1466A(a)(1) and (b)(1) encompass a broader list of sexually explicit conduct.

Subsections 1466A(a)(2) and (b)(2) are not subject to a limiting construction that would avoid the constitutional problem of prohibiting images that neither involve the use of actual minors or constitute obscenity. "[I]f the federal statute is not subject to a narrowing construction and is impermissibly overbroad, it nevertheless should not be stricken down on its face; if it is severable, only the unconstitutional portion is to be invalidated." Ferber, 458 U.S. at 769 n.24. The Court concludes subsections 1466A(a)(2) and (b)(2) are overbroad and thus invalid. In order to proceed with the superseding indictment against Defendant, the Government can only proceed on counts that charge violations of subsections 1466A(a)(1) and (b)(1).

The indictment in this case simply charges Defendant with violations of subsections 1466A(a) and (b). There is no reference to whether Defendant is being charged under subsections 1466A(a)(1) or (a)(2), or (b)(1) or (b)(2). The conduct outlined in count one states

14

sufficient facts to allege a violation of § 1466A(a)(1), and the conduct outlined in counts two through four state sufficient facts to allege violations of § 1466A(b)(1). Because subsections 1466A(a)(1) and (b)(1) incorporate the three-prong Miller test for obscenity, these portions of the statute are not overbroad in violation of the Due Process Clause. The conduct alleged in the superseding indictment delineates violations of those constitutional portions of the statute; therefore, Defendant's argument that the entire superseding indictment must be dismissed based on overbreadth must fail.

## II.     Impact of Lawrence v. Texas

Defendant argues that based on the holding of Lawrence v. Texas, 539 U.S. 558 (2003), the Government can no longer rely on the advancement of a moral code as a legitimate state interest. The Government asserts Lawrence was not a First Amendment case but instead merely held that the fact that a particular practice has been traditionally viewed as immoral is not a sufficient reason to uphold a law prohibiting it.

Lawrence held that a Texas law prohibiting homosexual sodomy violated the Due Process Clause of the Fifth and Fourteenth Amendments. Id. at 578-79. Lawrence solely addressed personal sexual relations in the privacy of an individual's home. Id. at 563. Nonetheless, citing United States v. Extreme Associates. Inc., 352 F. Supp. 2d 578 (W.D. Penn. 2005), Defendant argues Lawrence has rendered laws restricting obscene speech unconstitutional.

In Extreme Associates, Inc., the district court applied strict scrutiny to the federal obscenity statutes at issue and held that after Lawrence, the advancement of public morality was "no longer a legitimate, let alone compelling, state interest." Id. at 594. Concluding the federal obscenity statutes "fail the strict scrutiny test because they are not narrowly drawn to advance the asserted governmental interests of protecting minors and unwitting adults from exposure to obscene materials," the district court held the statutes were unconstitutional as applied, and the indictment was dismissed. Id. at 596.

On appeal, the Third Circuit reversed, holding,

> We are satisfied that the Supreme Court has decided that the federal statutes regulating the distribution of obscenity do not violate any constitutional right to privacy. For district and appellate courts in our judicial system, such a determination dictates the result in analogous cases unless and until the Supreme Court expressly overrules the substance of its decision. Lawrence v. Texas represents no such definitive step by the Court. It was therefore impermissible for the District Court to strike down the statutes at issue based on speculation that Orito and other pivotal obscenity cases "appear[ ] to rest on reasons rejected in" Lawrence.

United States v. Extreme Assocs. Inc., 431 F.3d 150, 161 (3d Cir. 2005). The Third Circuit concluded it was error for the district court to rely on the holding in Lawrence and thereby ignore longstanding Supreme Court precedent regarding obscenity. Id. at 162. The Fifth Circuit has also rejected the argument that Lawrence renders federal obscenity laws unconstitutional. See United States v. Coil, 442 F.3d 912, 917 (5th Cir. 2006) (concluding Stanley's progeny upholding the constitutionality of obscenity laws against attacks based on both the First Amendment and substantive due process was controlling in the absence of a contrary ruling from the Supreme Court).

On May 19, 2008, the Supreme Court reiterated that obscene speech is not protected by the First Amendment. Williams, — U.S. —, 128 S. Ct. at 1835. The Court concludes Lawrence does not render laws restricting obscene speech unconstitutional, and Defendant's argument based on Lawrence fails.

### III.    Sufficiency of Factual Allegations in the Superseding Indictment

Finally, Defendant contends the facts as alleged do not support an indictment for violations of 18 U.S.C. §§ 1466A(a) and (b), 1461, and 2. Defendant argues the materials at issue have serious literary and artistic value and thus are not obscene. Defendant contends the materials seized from him were professionally produced Japanese comic books, and the drawings in question were created by accomplished artists and are accompanied by narrative text. Defendant asserts the comic books at issue are widely and legally available to the public in Japan, and that while some of the images in his possession may be deemed objectionable for certain readers,

16

they nevertheless represent serious art by talented and skilled professionals, and as such, the cartons and drawings are not obscene.

The Government contends Defendant's argument, which is partially predicated on the proposition that the materials must have such value in the Southern District of Iowa because they are legal in Japan, fails because (1) the trier of fact must determine whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value, and (2) the result of Miller cases is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion the average person, applying contemporary community standards would reach in a given case. The Government asserts Defendant is free to argue to the jury that the materials have serious artistic and literary value in the Southern District of Iowa, but the Court cannot dismiss the case pretrial simply because the materials at issue may be legal in another country.

Whether the materials at issue have serious literary and artistic value and thus are not obscene is a factual determination most appropriately made by the trier of fact at trial. The Court concludes the superseding indictment alleges sufficient facts to support charges under §§ 1466A(a)(1) and (b)(1), 1461, and 2, contained therein, and the determination regarding whether the materials constitute obscenity is a determination properly left to the jury.

## CONCLUSION

Defendant's argument that he has an unlimited constitutional right to possess obscene materials must fail. Free Speech Coalition made clear that banned material must meet either the Ferber or Miller standards. There is no dispute the images in this case do not involve real children, thus Ferber is inapplicable. Subsections 1466A(a)(1) and (b)(1) require the visual depictions be obscene and thus must satisfy the Miller standard. Because subsections 1466A(a)(2) and (b)(2) do not require the visual depictions be obscene, and those subsections of the statute restrict protected speech, the Court finds those sections are constitutionally infirm and cannot form the basis of a charge under the superseding indictment.

The superseding indictment alleges sufficient facts to support counts charging violations of 18 U.S.C. § 1466A(a)(1) and (b)(1). Thus, the defects in subsections 1466A(a)(2) and (b)(2) do not necessitate dismissal of the superseding indictment in this case. The determination of what constitutes obscenity is a determination to be made by the trier of fact in this case. Accordingly, the Court finds the pending motion must be **denied in part and granted in part**. Defendant's Motion to Dismiss (Clerk's No. 45) is **denied,** with the exception of any prosecution under subsections 1466A(a)(2) and (b)(2) as to which the motion is **granted**.

**IT IS SO ORDERED.**

Dated this 2nd day of July, 2008.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT